MAPP *v.* STATE.

June 8, 1953

No. 38782 34 Adv. S. 129 65 So. 2d 257

*Frank F. Mize, James Walter Lee,* Forest, and *Will E. Ward,* Starkville, for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

McGEHEE, C. J.

The appellant, Sam Mapp, and one Willie B. Harper were jointly indicted for the theft of a jersey cow of the value of $100, the personal property of C. L. Gray. The codefendant, Harper, entered a plea of guilty, and then testified as a witness for the State against the appellant, who was convicted and sentenced to a term of five years in the state penitentiary for his alleged crime of grand larceny.

The first question presented for decision here on this appeal is whether or not there was error in the trial court's refusal to grant a directed verdict in favor of the defendant, Sam Mapp; but an analysis of the evidence to be hereinafter set forth will disclose that this assignment of error is not well taken in view of the positive testimony of the codefendant, Harper, whether true or not, which involves the defendant as an accomplice in the crime, and also in view of certain other circumstances which may have tended to incriminate him.

The second question presented, assuming that the evidence was sufficient to present an issue for the jury as to the guilt or innocence of the accused, is whether or not the verdict of conviction is so clearly against the overwhelming weight of the evidence as to entitle the defendant to a new trial.

It appears from the testimony of C. L. Gray, the owner of the stolen cow, that he lives on a farm about four miles south of the Town of Lake which is several miles east of Forest in Scott County, where the proof shows that the defendant was employed at a monthly salary by Mr. Hardy McCormack, who operates, among other busi-

nesses, a cattle sales barn for buying and selling cattle. Mr. Gray, when testifying as to the theft of his cow, was asked, ''When did you first miss her?'', and he answered, ''I missed her on Friday evening . . . '', ''When was the last time you had seen that cow before you missed her?'', and he answered, ''Let her out of the lot that Friday morning.'' He further testified that they were ''milking her every morning.'' The records of the cattle sales barn fully disclosed that the sale of this cow was handled through the sales barn office on Friday, July 11, 1952, and that she was thereafter sold on that same day to a Mr. Anthony, who released her to the owner and was refunded the purchase price of $100 by Mr. McCormack, as the owner of the cattle sales barn.

It is undisputed that the cow was brought to the cattle sales barn at Forest on the Friday morning hereinbefore referred to in a truck belonging to Mr. McCormack, driven by the defendant Sam Mapp; that the driver was accompanied by the codefendant Harper and one Roger Reid; that Harper and Reid first appeared at the cattle sales barn that morning and Harper had informed Mr. McCormack that he had the cow for sale; that thereupon Mr. McCormack requested the defendant Sam Mapp to take the truck and go with Harper and Reid to get the cow; and that when the three of them arrived at the scene near the home of Harper and also near the home of his mother, Betty Harper, they found the cow tied to a tree with a rope in the woods two hundred or three hundred yards from Betty Harper's home and also a short distance from the home of the codefendant Harper.

The defendant Mapp admitted that he helped Harper and Reid to load the cow into the truck and carried her to the cattle sales barn of his employer but that he did so at the request of his employer after his codefendant Harper and the said Roger Reid had appeared at the barn on that Friday morning where Harper had requested transportation for the cow to the sales barn,

where a cattle sale was conducted every other Friday; that this was on Friday morning, July 11, 1952; that the codefendant Harper was paid $50 for the cow by check which was signed by the owner of the cattle barn and was to Harper, which the proof shows that he later cashed at a Mr. Anderson's place of business. It was customary for the cattle sales barn to send a truck as far as ten or twelve miles for cattle where the owners had no means of transporting them.

No one testified that the defendant Mapp received any part of the proceeds of the sale of the cow. The codefendant Harper, who got the check cashed, as aforesaid, testified that he only received a carton of cigarettes of the value of $2.20 and the sum of $22.90 on account of the check, but he did not testify as to what became of the remainder of the proceeds thereof. But, his companion Roger Reid said that he was with him for the next two hours and he spent a good deal of money for whiskey.

It further appears that the defendant Sam Mapp, while about his duties as an employee of the cattle sales barn, sold the cow on that same day to a Mr. Anthony for the sum of $100; that after the cow was identified in the possession of Mr. Anthony as the property of Mr. Gray, she was returned to the owner and Mr. Anthony was reimbursed by the cattle sales barn for the $100 that he had paid for her. It affirmatively appears that the defendant Mapp received nothing on the resale of the cow. Prominent businessmen, local public officials and others testified as to his good reputation for honesty and fair dealing; and he was not shown to have been in the locality where Mr. Gray resides at the time the cow was caught and tied to the tree in the woods, except by the testimony of the codefendant Willie B. Harper. As heretofore stated, it is undisputed that he was seen near the home of Betty Harper on July 11, 1952, when the cow was loaded into the truck of the cattle sales barn, when he, Harper and Reid loaded her on the truck. Betty Harper

and another son, Louie Harper, saw the defendant on that occasion, but only the codefendant Willie B. Harper claims that the defendant Mapp came out there on Thursday afternoon in a black pick-up truck, and went with him to get the cow from Mr. Gray's pasture and assisted him in tieing her to the tree in the woods where he says she remained until she was loaded on the truck Friday morning. Incidentally, neither the defendant Sam Mapp nor the owner of the cattle barn owned a black pick-up truck, and it is indeed doubtful that this defendant, who had been working for the owner of a cattle sales barn for eighteen years, would have had little enough judgment to have gone out into a community during the afternoon, driving a truck, to get a cow and tie her in the woods, with the intention of returning for the animal on the next morning, as contended by the codefendant Willie B. Harper.

It is obvious that Mr. Gray, who had recovered the possession of his cow shortly after she was stolen, and who knew that the codefendant Harper had entered a plea of guilty to the crime, would have had no motive to misrepresent the fact as to the cow being let out of the lot that Friday morning, before he first missed her that evening, and at a time when the confessed thief says she was tied to a tree in the woods. There is never any conflict in the truth. When one statement is made as to what is the truth and another statement is made to the contrary as to what is the truth, then one or the other of the statements is necessarily false. If the cow in question was milked Friday morning and turned out of the lot by Mr. Gray before he missed her that afternoon, then it cannot be true that the codefendant Harper and the defendant Sam Mapp tied the same cow to a tree in the woods with a rope on Thursday afternoon and that she remained so tied until she was loaded on the truck for transportation to the cattle sales barn on Friday morning.

Moreover, Mr. McCormack and the defendant Mapp both testified that they were in Jackson on Thursday afternoon where they got some repair parts for a tractor at the Mississippi Road Supply Company, and that they visited the cattle barn of Tom Riddell out from Jackson later that afternoon and did not return to Forest until about seven o'clock.

On a motion for a new trial, it was abundantly shown that no one on behalf of the defense knew until the co-defendant Harper testified at the trial that he was making the contention that the defendant Mapp had helped him to get the cow and tie her to a tree with a rope in the woods on that Thursday afternoon, and hence the defense was not prepared to meet that issue other than by the testimony of Mr. McCormack and the defendant.

At the hearing on the motion for a new trial, one witness testified of having discussed with the defendant Sam Mapp at Jackson the parts needed for the repair of the tractor, and he fixed the time as of Thursday afternoon of July 10, 1952, by means of the invoice. Other witnesses testified as to the defendant being in Jackson that afternoon in company with Mr. McCormack, and also in regard to his having been at the Tom Riddell cattle barn later in the afternoon. One witness who saw him at Riddell's about 6:30 that afternoon was able to fix the date of the occasion by the fact that "I went over there to meet one of my brothers coming in from the service, and was down at the stockyard."

On the motion for a new trial, one of the officers testified that when the codefendant Harper was first arrested that he "was accusing his little brother with helping him to get the cow and tie her, and was involving Roger Reid with helping him and claiming that he got some of the money; that his little brother was emphatically denying any connection with the matter, and that Harper finally admitted that this brother had nothing to do with it," and also that Roger Reid had nothing to do with it,

"except to go down there with him and Sam Mapp the next day and put the cow in the truck," and that Roger got no part of the $50 that was paid by the cattle sales barn by check to Harper.

It was further shown at this hearing that one of the jurors who served in the case was asked prior to this trial as to how the court was getting along and that his reply was in substance that we have convicted all of them (charged with cattle stealing) that we have tried and that Sam Mapp's case is set for today, and if it is tried we will convict him. Two witnesses testified as to the juror having made this statement, and their testimony is uncontradicted. It sometimes occurs that when there is a local crusade for law enforcement in regard to cattle stealing, the prosecution has gone a long way toward obtaining a conviction when an indictment is returned and the corpus delicti is established, but this is perhaps as it should be so long as such an attitude does not transcend the proper bounds.

But aside from the proof made on the motion for a new trial, we are of the opinion that the verdict of the jury is contrary to the overwhelming weight of the evidence. Numerous witnesses, including prominent citizens and public officials, as aforesaid, testified as to the good reputation of the defendant for honesty and fair dealing, and he was shown to have been regularly employed by Mr. McCormack for a period of eighteen years with free access to his bank account for the purpose of writing checks in buying cattle for the sales barn, and no one testified that he got any part of the proceeds of either of the checks given in the purchase or in the resale of this cow. Then, too, the officials testified as to this defendant having furnished them information from time to time which had led to the recovery of stolen cattle.

Aside from the fact that the defendant Mapp helped to load the cow into the truck, after having found her tied in the woods, there is no incriminating circumstances

of particular significance against him in the case. However, the cow being tied to a tree is not wholly inconsistent with a desire on the part of the codefendant to have her readily available for loading when the truck arrived, instead of having to thereafter locate her in the pasture or woods and catch her after the truck came. He evidently caught and tied the cow after she had been turned out of the lot that Friday morning by the owner, Mr. Gray, and then went several miles to Forest to get transportation for her to the barn. This theory is manifestly true if the cow was not missed until Friday afternoon and had been milked and turned out of the lot that morning, as testified to by the owner.

Under all of the facts and circumstances, █ we have concluded that the case should be reversed and remanded for a new trial on the ground that the verdict is clearly contrary to the overwhelming weight of the evidence in the case.

Reversed and remanded.

*Kyle, Arrington, Ethridge* and *Lotterhos, JJ.,* concur.